```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
DAUDI JUSTIN, and all others
similarly situated, and THE
COMMUNITY SERVICE SOCIETY OF
NEW YORK,

        Plaintiffs,                     MEMORANDUM AND ORDER

           - against –                  22 Civ. 10370 (NRB)

MILTON ADAIR TINGLING, in his
official capacity as County
Clerk of New York County and
Commissioner of Jurors,

        Defendant.

------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Daudi Justin ("Justin") and the Community Service Society of New York ("CSS" and together with Justin, "plaintiffs") bring this putative class action claiming that Section 510(3) of New York's Judiciary Law, which disqualifies convicted felons from serving on juries, is unconstitutional only as applied in New York County under both the Sixth and Fourteenth Amendments. ECF No. 1. Before considering plaintiffs' request to seek class certification, ECF No. 15, the Court ordered the parties to brief whether plaintiffs have standing to bring this action, ECF Nos. 18, 20. For the reasons set forth below, the Court concludes that plaintiffs lack standing to pursue their Sixth Amendment claim but have standing to bring their Fourteenth Amendment claim. However,

defendant raises strong arguments in support of its position that plaintiffs' Fourteenth Amendment claim would fail on the merits. Therefore, we grant defendant's request for leave to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

**A. The Parties**

Justin is a Black man who resides in Manhattan and works as a public defender in Harlem. ECF No. 1 (Compl.) ¶¶ 6, 149, 153. In 2009, Justin was convicted of a felony after pleading guilty to criminal possession of a controlled substance in the third degree. Id. ¶ 142. He alleges that he received jury questionnaires on two occasions and both times was required to disclose that he had a past felony conviction and was therefore disqualified. Id. ¶ 153. Notably, Justin chose not to avail himself of New York's process for restoring jury service eligibility "after learning how burdensome and intrusive the process is."[1]  Id. ¶ 152.

---

[1] Individuals like Justin with only one felony conviction can have their jury eligibility restored by applying for and obtaining a Certificate of Relief from Disabilities ("CRD") or a Certificate of Good Conduct ("CGC"), while those with more than one felony conviction can only seek a CGC. See N.Y. State Unified Court System, Getting Rights Back, https://www.nycourts.gov/courthelp/criminal/gettingRightsBack.shtml (last visited January 23, 2024). The commissioner of jurors maintains discretion in determining whether a convicted felon may re-enter the jury pool even if he obtains a CRD or CGC. See 1991 N.Y. Op. Att'y. Gen. No. 91-F10, 1991 WL 499877, at *4-5 (N.Y.A.G. Dec. 31, 1991).

CSS is a non-profit organization headquartered in Manhattan that supports individuals with past convictions in New York County to overcome barriers to civic participation, employment and housing through research, direct services, litigation, and advocacy. Id. ¶¶ 7, 154. CSS alleges that its "work includes (a) educational flyers about the process of responding to jury questionnaires and (b) dedicating parts of its training sessions to presenting information about jury eligibility for people with conviction histories." Id. ¶ 160.

Defendant, a former justice of the Supreme Court, New York County, is currently the County Clerk of New York County and Commissioner of Jurors for the Supreme Court, New York County. Id. ¶¶ 8, 18, 161-65. In this capacity, he is responsible for enforcing "the laws and rules relating to the drawing, selection, summoning and impaneling of jurors." Id. ¶ 161 (quoting N.Y. Judiciary Law § 502(d)).

**B. The Lawsuit**

On December 8, 2022, plaintiffs filed this putative class action against defendant in his official capacity challenging the constitutionality of Section 510(3) of New York's Judiciary Law, which disqualifies individuals with felony convictions from

-3-

serving on a jury.² Id. ¶¶ 8, 23-24. Plaintiffs claim that Section 510(3) "causes the underrepresentation of Black people in the Manhattan [jury] pool" because of the local history of racialized policing and prosecution. Id. ¶ 23; see also id. ¶¶ 32-94. For example, plaintiffs allege that approximately 25 percent of Black Manhattanites otherwise eligible to serve on a jury are disqualified due to a felony conviction, whereas only three percent of similarly situated non-Black Manhattanites are disqualified for the same reason. Id. ¶¶ 26-27.

Against this backdrop, plaintiffs assert that defendant's enforcement of Section 510(3) in New York County violates the Sixth and Fourteenth Amendments. Id. ¶¶ 178-79. In turn, they seek a judicial declaration to that effect as well as an injunction barring the enforcement of the jury service disqualification in New York County.³ See id.

---

² Section 510 provides in full that "[i]n order to qualify as a juror a person must: 1. Be a citizen of the United States, and a resident of the county. 2. Be not less than eighteen years of age. 3. Not have been convicted of a felony. 4. Be able to understand and communicate in the English language." N.Y. Judiciary Law § 510.
³ Plaintiffs also seek certification of two proposed classes. See Compl. ¶¶ 166-75. Because this decision only addresses standing, the Court need not address class certification.

**C. The Instant Motion**

On January 10, 2023, plaintiffs filed a pre-motion letter regarding their anticipated motion for class certification. ECF No. 15. Defendant opposed plaintiffs' request on January 13, 2023, arguing, in relevant part, that plaintiffs lack standing for their Sixth Amendment claim. ECF No. 17 at 2. In response, the Court ordered the parties to brief standing on both claims prior to any motion for class certification.[4] ECF Nos. 18, 20. The standing motion now before the Court was fully briefed on April 21, 2023. ECF Nos. 21, 22, 26.

## LEGAL STANDARD

**A. Rule 12(b)(1)**

The Court will treat defendant's motion as one to dismiss the action under Rule 12(b)(1) for lack of standing. See Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court

---

[4] The Court explained that it was not only permissible but also "the general trend . . . for courts to resolve dispositive motions prior to class certification." ECF No. 18 at 1-2 (citing 3 Newburg & Rubenstein on Class Actions § 7:9 (6th ed.)). Specifically, we explained that because "standing is a threshold question that is typically decided prior to class certification," the issue of standing should be addressed prior to any motion on class certification. Id. at 2 (citing Doyle v. Mastercard Int'l Inc., 700 F. App'x 22, 24 (2d Cir. 2017)).

lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); accord Ford v. D.C. Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam).  To survive a motion to dismiss for lack of subject-matter jurisdiction based on standing pursuant to Rule 12(b)(1), the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue."  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011)).  In considering such a motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

**B. Article III Standing**

Article III of the Constitution requires that a plaintiff establish standing for a case to be justiciable.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).  The "irreducible constitutional minimum" of standing contains three elements: (1) injury in fact; (2) causation; and (3) redressability.  Id. at 560-61.  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements for each claim asserted.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

The parties' dispute centers on the injury-in-fact requirement,[5] "the first and foremost of standing's three elements." Id. (alteration and internal quotations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[6] Lujan, 504 U.S. at 560 (internal quotations and citations omitted).

**C. Organizational and Associational Standing**

Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and (2) associational standing. Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020). "To establish organizational standing, an organizational plaintiff 'must meet the same standing test that applies to individuals.'" Id. (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998)). To establish associational standing, an organizational

---

[5] Defendant does not dispute that plaintiffs satisfy both causation and redressability because defendant is responsible for enforcing New York's Judiciary Law 510(3) in New York County and enjoining defendant from enforcing that law would allow Justin and similarly situated individuals to serve on juries.

[6] In addition to Article III standing, the doctrine of prudential standing "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." McCarty v. The Bank of N.Y. Mellon, 669 F. App'x 6, 7 (2d Cir. 2016).

plaintiff must show, among other things, that "its members would otherwise have standing to sue in their own right."  Id. at 495.

**D. Third-Party Standing**

In addition to asserting claims on their own behalf (or, for organizations, on their members' behalf), litigants may bring actions raising the rights of third parties if three requirements are met: (1) the litigant must have suffered an "injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the dispute"; (2) the litigant must "have a close relation to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests."[7]  Powers v. Ohio, 499 U.S. 400, 410-11 (1991) (internal quotations and citations omitted).

---

[7] The parties dispute the ongoing viability of the third-party standing doctrine after the Supreme Court's decision in Lexmark v. Static Control Components, 572 U.S. 118 (2014).  ECF No. 22 ("Opp.") at 15 n.7; ECF No. 26 (Reply) at 6-7.  There is no doubt that Lexmark left "considerable uncertainty as to whether the third-party standing rule continues to apply."  N.Y. State Citizens' Coal. for Children v. Poole, 922 F.3d 69, 75 (2d Cir. 2019).  Nonetheless, the Second Circuit has continued to hold that courts are required to address third-party standing, see id. (citing United States v. Suarez, 791 F.3d 363, 367 (2d Cir. 2015)), and district courts within the Circuit have followed suit, see, e.g., Marchant v. de Blasio, 20 Civ. 10544 (VEC), 2021 WL 4199940, at *4-5 (S.D.N.Y. Sept. 15, 2021); Highview Props. D.H.F. Inc. v. Town of Monroe, 606 F. Supp. 3d 5, 20 (S.D.N.Y. 2022).  Therefore, we will do the same.

**DISCUSSION**

Plaintiffs claim that Section 510(3), as applied in New York County, violates both the Sixth and Fourteenth Amendments. Because standing must be established for each claim, we will address plaintiffs' two constitutional claims in turn.

**A. Sixth Amendment**

   **1. Direct Standing**

Plaintiffs first contend that Justin has direct standing to bring his Sixth Amendment claim because he is "suffering the injury of being excluded from jury service due to" New York's convicted felon prohibition. ECF No. 22 ("Opp.") at 11. Plaintiffs' reliance on the Sixth Amendment is misplaced. First, as the text of the Sixth Amendment makes clear, the Amendment only applies to the "the accused" (i.e., to criminal defendants). U.S. Const. am. VI. Specifically, the Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." Id. (emphasis added). Since the Sixth Amendment's protections are only afforded to "the accused," Justin, who is not a criminal defendant, lacks a "legally protected interest" necessary to

establish an injury in fact for his Sixth Amendment claim.  Lujan, 504 U.S. at 560.

The Supreme Court's cases in this context fully support this reading of the Sixth Amendment.  Indeed, the Supreme Court has held on two occasions that the systematic exclusion of women from juries "denies a criminal defendant" his right to an impartial jury under the Sixth Amendment.  Duren v. Missouri, 439 U.S. 357, 359 (1979) (emphasis added); accord Taylor v. Louisiana, 419 U.S. 522, 537 (1975);[8] see also Berghuis v. Smith, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." (emphasis added)).

In other related contexts, the Supreme Court has repeatedly concluded that Sixth Amendment rights are personal to the accused. See, e.g., Texas v. Cobb, 532 U.S. 162, 171 n.2. (2001) ("The Sixth Amendment right to counsel is personal to the defendant[.]"); McKaskle v. Wiggins, 465 U.S. 168, 174-75 (1984) ("Under [the

---

[8] As to standing specifically, the Duren Court held that "[a] criminal defendant has standing to challenge [an] exclusion resulting in a violation of the fair-cross-section requirement, whether or not he is a member of the excluded class."  Duren, 439 U.S. at 359 n.1 (citing Taylor, 419 U.S. at 526) (emphasis added).

Sixth] Amendment, it is the accused, not counsel, who [is afforded rights]."); Faretta v. California, 422 U.S. 806, 837 (1975) (Burger, J., dissenting) ("As the Court seems to recognize . . . the conclusion that rights guaranteed by the Sixth Amendment are 'personal' to an accused reflects nothing more than the obvious fact that it is he who is on trial and therefore has need of a defense."); United States v. Marion, 404 U.S. 307, 313 (1971) (holding that the Sixth Amendment's speedy trial provision "has no application until the putative defendant in some way becomes an 'accused'").[9]  Therefore, the Sixth Amendment's protections only extend to criminal defendants.  As such, the deprivation of Justin's ability to serve on a jury does not constitute an injury

---

[9] Despite the weight of this authority, plaintiffs argue that in Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, 954 F.3d 118 (2d Cir. 2020), the Second Circuit "left open" the question of whether the Sixth Amendment's protections are limited to the "accused." Opp. at 13.  However, the Second Circuit's holding in that case was that the district court improperly failed to consider whether courts have "equitable powers" to enjoin Sixth Amendment violations even where plaintiff does not otherwise have Sixth Amendment rights.  See Fed. Defs., 954 F.3d at 133.  This is because the plaintiff in Federal Defenders did not assert "a cause of action springing directly from the Sixth Amendment" but instead "invoke[d] a cause of action in equity that derives from the judiciary's traditional equitable powers." Id. at 132 (alterations and internal quotations omitted).  As a result, the Second Circuit simply ordered the district court to consider in the first instance several "thorny legal issues" unique to the equitable context.  Id. at 133.  Thus, the Court's decision in Federal Defenders is wholly inapplicable here where plaintiffs assert a claim directly under Sixth Amendment rather than one deriving from the judiciary's equitable powers.  Furthermore, to the extent that the Second Circuit in Federal Defenders left open any question outside the specific equitable context, it was only whether "criminal defense attorneys" are afforded rights under the Sixth Amendment.  Id. at 133.  Here, although Justin is a criminal defense attorney, he asserts his claim on his own behalf based on his status as a prospective juror.

to any "legally protected interest" Justin has (or does not have) under the Sixth Amendment. Lujan, 504 U.S. at 560.

Plaintiffs resist this conclusion on the basis that it improperly veers into a resolution of their Sixth Amendment claim on the merits. Opp. at 12-15. The Court is of course mindful that it must not "conflat[e] the requirement for an injury in fact with the validity of [plaintiff's] claim." Dubuisson v. Stonebridge Life Ins. Co., 887 F.3d 567, 574 (2d Cir. 2018). However, "th[e] term [legally protected interest] has independent force and meaning" in the injury analysis and can be considered "without any need to open the door to merits considerations at the jurisdictional stage." Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir. 2006); see also Maddox v. Bank of N.Y. Mellon Trust Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (treating "legally protected interest" as a separate requirement to establish an injury in fact).

For this reason, courts in this Circuit have regularly dismissed actions on standing grounds where the claimed legal interest was not cognizable.[10] In fact, the Supreme Court has

---

[10] See, e.g., Marchant, 2021 WL 4199940, at *5 (finding plaintiffs lacked an injury in fact where they "fail[ed] to articulate the legally-protected interest giving rise to a cognizable injury"); Am. Italian Women for Greater New Haven v. City of New Haven, No. 3:21 Civ. 1401 (JCH), 2023 WL 122043, at

-12-

similarly held that dismissal was warranted on standing grounds where plaintiffs' claimed injury was "not to a legally cognizable right."  McConnell v. Fed. Election Comm'n, 540 U.S. 93, 227 (2003), overruled on other grounds by Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010).[11]

Furthermore, courts have specifically dismissed Sixth Amendment challenges on standing grounds where the party bringing the challenge was not himself an "accused." For example, the court in Ziegler v. New York, 948 F. Supp. 2d 271 (N.D.N.Y. 2013), held that criminal defense attorneys lacked Article III standing to sue for violations of the right to counsel because they could not "assert Sixth Amendment claims based on rights enjoyed by others, namely the criminal defendant[s]."[12]  Id. at 285; see also United

---

*4-5 (D. Conn. Jan. 5, 2023) (dismissing claim on standing grounds where plaintiff lacked a "legally protected interest"); Schulz v. Kellner, No. 1:07 Civ. 0943 (LEK/DRH), 2011 WL 2669456, at *6 (N.D.N.Y. July 7, 2011) ("As the Court here does not find that Plaintiffs have a legally protected interest . . . the Court cannot find such cognizable injury here.").

[11] Plaintiffs cite Trump v. Hawaii, 138 S. Ct. 2392 (2018), in support of their argument that the legally protected interest analysis improperly goes to the merits of their claim. Opp. at 12-13. There, the Court rejected the government's argument that plaintiffs lacked a legally protected interest because such an argument "concern[ed] the merits rather than the justiciability of plaintiffs' claims." Id. at 2416. However, that conclusion followed directly from the Court's citations to numerous cases where, confronted with similar facts, the Court had "considered the merits of claims." Id.  Here, by contrast, plaintiffs do not point to a single case where a court considered the merits of a Sixth Amendment claim asserted by a plaintiff similarly situated to Justin.

[12] Plaintiffs attempt to distinguish Ziegler on the grounds that the attorneys did not claim their Sixth Amendment rights were violated. Opp. at 14. Even if that is correct, the court nevertheless made clear that the attorney

States v. Paris, 954 F.3d 1069, 1071-72 (8th Cir. 2020) (holding that defendant did not have standing to assert Sixth Amendment right to counsel of co-defendant because that right "is personal to each defendant"); United States v. Dobson, 626 F. App'x 117, 123 (6th Cir. 2015) (similar).

These authorities make clear that, contrary to plaintiffs' contention, Justin's Sixth Amendment claim can be dismissed on standing grounds without wading into its merits. Therefore, our conclusion remains undisturbed: because Justin is not afforded any Sixth Amendment protections, his claimed injury is "not to a legally cognizable right." McConnell, 540 U.S. at 227. Consequently, Justin lacks direct standing to bring his Sixth Amendment claim.

### 2. Organizational and Associational Standing

For similar reasons, CSS has neither organizational nor associational standing to bring its Sixth Amendment claim. As to organizational standing, which subjects an organization to "the same standing test that applies to individuals," Rodriguez, 444 F. Supp. 3d at 492, CSS's argument suffers from the same fundamental

---

plaintiffs did not have standing to assert Sixth Amendment claims, and thus Ziegler's core holding remains highly instructive.

defect that Justin's does.  Like Justin, CSS does not suggest that it is or will become a criminal defendant, and therefore it has no legally cognizable interest to protect under the Sixth Amendment. Similarly, CSS lacks associational standing, which requires a showing that its members "would otherwise have standing to sue in their own right."  Id. at 495.  CSS, however, works "exclusively" with formerly incarcerated individuals, Compl. ¶ 156, and there is no indication that CSS represents or will represent any criminal defendants who would be entitled to Sixth Amendment protections. Accordingly, CSS lacks both organizational and associational standing.

### 3. Third-Party Standing

Plaintiffs further contend that they have third-party standing to bring their Sixth Amendment challenge.  Opp. at 15-20.  However, both Justin and CSS fail the first element of the third-party standing inquiry, which requires them to have an injury in fact.  See Powers, 499 U.S. at 411.  As discussed extensively above, plaintiffs lack an injury in fact because they have no cognizable legal interest under the Sixth Amendment.

Even if plaintiffs could satisfy the first element of third-party standing, they would fail the third element, which requires

a showing that there is "some hindrance to the third party's ability to protect his or her own interests." Id.  However, the numerous cases brought by criminal defendants concerning their right to a representative jury demonstrates that there is no hindrance to defendants asserting their own Sixth Amendment rights.  See, e.g., Berghuis, 559 U.S. at 319-20; Duren, 439 U.S. at 359; Taylor, 419 U.S. at 537; United States v. Rioux, 97 F.3d 648, 654 (2d Cir. 1996); United States v. Jackman, 46 F.3d 1240, 1241-44 (2d Cir. 1995).  Therefore, plaintiffs have no standing -- direct or third-party standing -- to bring their Sixth Amendment claim.

**B. Fourteenth Amendment**

Plaintiffs also assert that Justin has direct standing to bring a Fourteenth Amendment claim.[13]  Opp. at 6-10.  Specifically, they contend that Justin has suffered, and continues to suffer, "the denial of his jury rights on account of his race." Id. at 7.  For purposes of standing, we accept plaintiffs' claims as pled,

---

[13] The crux of this claim is that New York's jury service ban on convicted felons, as applied in New York County, is racially discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment.  Opp. at 6.  The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  "This language has been interpreted to mean that 'all persons similarly circumstances shall be treated alike.'"  Hayden v. Paterson, 594 F.3d 150, 169 (2d Cir. 2010) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).

-16-

"so we must assume that" New York's disqualification constitutes a race-based discrimination as plaintiffs contend. Fed. Election Comm'n v. Cruz, 596 U.S. 289, 298 (2022). On that assumption, the Court concludes that Justin has suffered an injury in fact. Indeed, the Supreme Court has made clear that excluded jurors seeking to remedy alleged racial discrimination in the jury system have standing to bring a civil action.[14] Carter v. Jury Comm'n of Greene Cnty., 396 U.S. 320, 330 (1970) ("Surely there is no jurisdictional or procedural bar to an attack upon systematic jury discrimination by way of a civil suit."). And, because Justin has standing for the Fourteenth Amendment claim, we need not independently assess whether CSS has standing to assert the same claim. See New York v. U.S. Dep't of Agric., 454 F. Supp. 3d 297, 303 (S.D.N.Y. 2020) ("When, as here, there are multiple plaintiffs, only one plaintiff need possess the requisite standing for a suit to go forward.").[15]

---

[14] Justin's asserted reputational injury is also cognizable. See Opp. at 7 (claiming Justin has suffered "the stigmatic injury of being branded a second-class citizen that is unfit for jury service"). The Supreme Court has held that by excluding prospective jurors, the state is "declaring them unfit for jury service and thereby putting a brand upon them, affixed by law, an assertion of their inferiority." Peters v. Kiff, 407 U.S. 493, 499 (1972) (internal quotations omitted). Such "reputational harm" is a "concrete injury" sufficient to confer standing. TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021).

[15] See also Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue."); Town of Chester, N.Y. v. Laroe

Defendant does not strongly contest plaintiffs' standing arguments but instead maintains that plaintiffs' Fourteenth Amendment claim would not survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Reply at 9-10.  Defendant accordingly requests the Court's permission to make such a motion, which the Court grants in accordance with the briefing schedule set forth below.

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs lack standing to pursue to their Sixth Amendment claim and thus grants defendant's motion in that respect.  However, the Court finds that Justin has standing to pursue his Fourteenth Amendment claim, which obviates the need for CSS to independently demonstrate standing for the same claim.  As such, the Court denies defendant's motion as to plaintiffs' Fourteenth Amendment claim, but grants defendant's request for leave to file a motion to dismiss that claim under Federal Rule of Civil Procedure 12(b)(6). Defendant's motion shall be filed no more than thirty days from the issuance of this order; plaintiffs' opposition shall be filed no more than thirty days thereafter; and defendant's reply, if

---

Estates, Inc., 581 U.S. 433, 439 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

any, shall be filed no more than fourteen days after plaintiffs' opposition.

**SO ORDERED.**

Dated:  January 23, 2024
        New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE